PAUL C. BAUDUCCO, ESQ., SBN 119512
LEWITT, HACKMAN, SHAPIRO,
  MARSHALL & HARLAN
16633 Ventura Boulevard, 11th Floor
Encino, California 91436-1865
Telephone: (818) 990-2120
Telecopier: (818) 981-4764

Attorneys for Plaintiff Joey Ball

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>VICTOR HUEZO<br><br>             Debtor.<br><br>JOEY BALL,<br><br>             Plaintiff,<br><br>vs.<br><br>VICTOR HUEZO,<br><br>             Defendant. | **CASE NO: 2:11-BK-35922-PC**<br><br>**CHAPTER 7**<br><br>**ADV. NO.**<br><br>**COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4) AND 523(a)(6)** |

COMES NOW JOEY BALL (hereinafter "Plaintiff"), a creditor and party in interest in the above-captioned matter, and files this complaint to determine dischargeability of debt pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4) and 523(a)(6) and states as follows:

1. Defendant Victor Huezo (hereinafter "Debtor") is the debtor in this bankruptcy proceeding.

2. Plaintiff is a creditor of Debtor.

[THIS DOCUMENT PRINTED ON RECYCLED PAPER]

3. This adversary proceeding to determine dischargeability of a debt is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(I) and is being brought in connection with the case of Debtor under Chapter 7 of Title 11 of the United States Code, Case No. 2:11-BK-35922-PC, now pending in this Court.

4. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. § 523.

5. Debtor may be served with summons and complaint through his attorney of record in the underlying Chapter 7 case, Baruch C. Cohen, 4929 Wilshire Boulevard, Suite 940, Los Angeles, California 90010 and at his home address of 9401 Wayside Drive, Shadow Hills, California 91040.

6. At the present time, Plaintiff has a lawsuit on file in Los Angeles Superior Court (Case No. BC460985) against Debtor and Fremont Investment Holdings, Inc. ("Fremont"). The complaint was filed on May 5, 2011.

**GENERAL ALLEGATIONS**

7. At all times herein mentioned, Debtor was in the business of lending by and through Fremont, also a debtor in bankruptcy, Chapter 7 Case No. 2:11-bk-31045-PC. Debtor was, at all times herein mentioned, the Executive Vice-President/CEO of Fremont and responsible for all facets of Fremont's business including, but not limited to, daily operations, lending decisions and collections.

8. In or about July 2007, Debtor asked Plaintiff to become an investor in Fremont. Debtor verbally represented to Plaintiff, that if Plaintiff loaned funds to Fremont, he would receive "guaranteed" payments providing a return on his "investment" equivalent to an annual interest rate between 8.5% and 15%. Debtor provided Plaintiff with written materials explaining the lending process. The written materials explained that investors would loan money to Fremont. Then Fremont would loan the funds to borrowers. The borrowers would pay Fremont and Fremont would pay the investors back a fixed rate. Investors would receive a guaranteed monthly or quarterly interest payment equivalent to an annual rate of between 8.5% and 15%.

9. The written materials provided to Plaintiff by Debtor assured Plaintiff that since investors would be loaning money to Fremont, not directly to the borrower, Fremont was responsible for repayment to investors and payments to investors would be made even if borrowers failed to repay the money they borrowed from Fremont. The written materials also explained that the money investors loaned to Fremont would be secured by assets and collateral Fremont would hold from the various borrowers to whom it made loans. Investors were told they would receive a balance sheet showing assets and liabilities on a quarterly basis so they would know what assets Fremont was holding as collateral to protect its investors' money.

10. In reliance upon Debtor's oral representations and assurances to Plaintiff and the written materials provided by Debtor, Plaintiff made four loans to Fremont totaling $844,750.

11. On or about November 28, 2007, Plaintiff loaned $240,000 to Fremont secured by a promissory note signed by Debtor as Executive Vice-President-CEO of Fremont. The promissory note called for an interest rate of 15% per annum, for monthly payments of $3,000 per month to be applied to interest first and for the principal balance to be paid in full on or before January 1, 2009. A copy of the November 28, 2007 promissory note is attached as Exhibit "A" and incorporated herein by reference.

12. Plaintiff wired $240,000 to Fremont's bank account. Fremont made the first payment of $3,000 as agreed on or about January 3, 2008.

13. Reassured by receiving the first payment as agreed, on or about January 8, 2008, Plaintiff loaned an additional $70,000 to Fremont secured by a promissory note signed by Debtor as Executive Vice-President-CEO of Fremont. The promissory note called for an interest rate of 15% per annum, for monthly payments of $875 per month to be applied to interest first and for the principal balance to be paid in full on or before February 1, 2009. A copy of the January 8, 2008 promissory note is attached as Exhibit "B" and incorporated herein by reference.

14. Plaintiff wired $70,000 to Fremont's bank account. Fremont made the second payment of $3,875 as agreed on or about February 1, 2008.

15. Further reassured by the payments received, on or about February 1, 2008, Plaintiff loaned $130,000 to Fremont secured by a promissory note signed by Debtor as

1  Executive Vice-President-CEO of Fremont. The promissory note called for an interest rate of
2  15% per annum, for monthly payments of $1,625 per month to be applied to interest first and for
3  the principal balance to be paid in full on or before March 1, 2009. A copy of the February 1,
4  2008 promissory note is attached as Exhibit "C" and incorporated herein by reference.

5      16. Plaintiff wired $130,000 to Fremont's bank account. Fremont made a third
6  payment of $5,500 on or about March 1, 2008.

7      17. On or about March 21, 2008, Plaintiff loaned $404,750 to Fremont secured by a
8  promissory note signed by Debtor (the "Huezo Promissory Note"). However, the Huezo
9  Promissory Note was executed by Debtor individually, not on behalf of Fremont. Specifically,
10 Debtor signed the note "Victor Huezo – Executive Vice President-CEO Individually and not for
11 Fremont Investment Holdings, Inc. The Huezo Promissory Note called for an interest rate of
12 15% per annum, for monthly payments of $5,059.37 per month to be applied to interest first and
13 for the principal balance to be paid in full on or before March 1, 2008. A copy of the March 21,
14 2008 promissory note is attached as Exhibit "D" and incorporated herein by reference.

15     18. Although Debtor signed the Huezo Promissory Note individually, in an email
16 dated March 25, 2008 he directed Plaintiff to wire the funds to Debtor "via the Fremont
17 Investment Holdings Account to avoid any bank delays of having the money go to my personal
18 account and then to the Fremont account." A copy of the March 25, 2008 email is attached as
19 Exhibit "E" and incorporated herein by reference. As requested, Plaintiff wired $404,750 to
20 Fremont's bank account a few days after the Huezo Promissory Note was signed. Fremont made
21 a third payment of $5,500 on or about March 1, 2008.

22     19. Fremont made the interest payments required during 2008. However, when the
23 Promissory Notes came due on January 1, 2009, February 1, 2009 and March 1, 2009, both
24 Fremont and Debtor failed to repay the principal balances due. Throughout 2009 and 2010,
25 Fremont made increasingly sporadic interest payments to Plaintiff, but the total paid in interest
26 was seriously deficient and no principal was repaid. The last payment was made on or about
27 July 26, 2010.

28

- 4 -

COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

20. Beginning in May 2010 and continuing thereafter, Plaintiff has repeatedly provided Fremont and Debtor with written notice of their default on the Promissory Notes and demanded payment of the total remaining principal balances along with all accrued interest.

21. More than sixty days has passed since notice of default was first given and Debtor and Fremont have failed to cure the defaults. From and after May of 2010, Debtor has repeatedly acknowledged receipt of said notices and has repeatedly told Plaintiff he would cure the defaults under the Promissory Notes. Despite Debtor's repeated promises to pay Plaintiff the sums due under the Promissory Notes, Debtor and Fremont have failed and refused to pay Plaintiff the sums due and owing.

22. All four of the promissory notes executed by Debtor (collectively referred to as the "Promissory Notes") contain provisions for the payment of late fees of 3% on overdue payments and for payment of Plaintiff's costs and expenses, including attorneys' fees, in the event Plaintiff was required to bring legal action to enforce the notes.

## COUNT I

### (Fraud – 11 U.S.C. § 523(a)(2)(A))

23. Plaintiff refers to and incorporates herein by reference, paragraphs 1 through 21, inclusive.

24. In order to convince Plaintiff to become an investor in Fremont and to loan Fremont money, Debtor made misrepresentations of material fact, suppressed facts he was duty bound to disclose and made promises he had no intention of performing.

25. Debtor made the following representations to Plaintiff:

- Fremont's investors would receive a guaranteed monthly or quarterly interest payments on all monies loaned to Fremont;

- Fremont's investors' money would be secured by the assets and collateral Fremont holds against the various loans made to its borrowers;

- Fremont's investors are paid in full within 12 months or when the loan comes due;

- If an investor needs a portion of the money loaned prior to the loan coming due, Fremont would pay the investor off or arrange for a new investor to purchase the existing debt;
- Fremont would provide a balance sheet showing assets and liabilities to all investors on a quarterly basis;
- Since Fremont's investors were loaning money to Fremont, not directly to Fremont's borrowers, Fremont was responsible for payment and would make payments to investors according to the terms in the promissory note regardless of whether or not the borrower defaulted on its loan payments to Fremont;
- Fremont would make all efforts to lower its risk by spreading its liabilities with clients, over-collateralizing loans and limiting its exposure to any single client; and
- Most loans made by Fremont would be short term loans underwritten with a secured exit strategy or repayment schedule.

Once Debtor and Fremont defaulted on the loans made by Plaintiff, Debtor made the following additional representations to Plaintiff:

- Debtor was taking all necessary steps to collect the money due on the loans to borrowers in order to cure the defaults on Plaintiff's Promissory Notes;
- Debtor would pay back all principal amounts and all interest charges due to Plaintiff according to the terms of the Promissory Notes;
- Debtor would have possession of assets to be liquidated by January 15, 2011 and would use the monies generated from those assets to make payments towards the monies due to Plaintiff.

26. The representations made by Debtor were in fact false. The true facts were:

- Fremont's investors did not receive the guaranteed monthly or quarterly interest payments;

- The money loaned to Fremont by investors was not actually secured by assets or collateral;
- Fremont's investors were not paid in full within 12 months or when their loans came due;
- If an investor needed the money loaned to Fremont, Fremont was not able to pay the investor off or arrange for a purchase of the existing debt;
- Fremont did not provide balance sheets showing assets and liabilities to its investors;
- Although Debtor and Fremont were responsible for the payments on the promissory notes held by Fremont's investors, Debtor and Fremont did not make payments to investors according to the terms of the promissory notes in the event of borrower default;
- Fremont did not take the necessary steps to lower its risk by spreading its liabilities, over-collateralizing loans and limiting its exposure to any single client;
- The loans made by Fremont did not have a secured exit strategy or repayment schedule;
- Debtor and Fremont would not collect the money due on their loans to borrowers in order to cure the defaults on Plaintiff's Promissory Notes;
- Debtor and Fremont would not pay back all principal amounts and all interest charges due to Plaintiff according to the terms of the Promissory Notes;
- Debtor and Fremont would not liquidate assets and use the monies generated from those assets to make payments towards the monies due to Plaintiff.

27.  Additionally, Debtor concealed material facts from Plaintiff that he was duty bound by his fiduciary relationship with Plaintiff to disclose.  The concealed facts were that Fremont was engaged in a fraudulent business activity by conducting a "ponzi" or "pyramid"

scheme. Based on information and belief, no monies were invested by Debtor, and the so-called interest payments were paid using new "investments" Debtor and Fremont were receiving, which terminated when there no longer were investors providing additional funds to Debtor and Fremont.

28. In addition, Debtor made additional misrepresentations in connection with the Huezo Promissory Note. Specifically, in emails to Plaintiff between March 21 and March 25, 2008 (see Exhibit "E"), Debtor represented that the $404,750 being loaned to Fremont under the Huezo Promissory Note was to be used to fund a loan to a person named Marty Romano. Plaintiff is informed and believes that no money was ever loaned to Marty Romano and that Debtor used the $404,750 for his own personal benefit.

29. The misrepresentations were communicated to Plaintiff by Debtor in written marketing materials between July and November 2007 in order to induce Plaintiff to loan money to Fremont. The misrepresentations in the marketing materials were also confirmed in email communications from Debtor to Plaintiff and verbally during conversations between the two between July 2007 and April 2008 and beyond. Beginning in April 2010, and continuing to the present, Debtor made additional misrepresentations to Plaintiff, both in emails and verbally, assuring him that Debtor was taking all steps necessary to pay Plaintiff in full the principal balances due on each of the promissory notes along with all past due interest payments.

30. When Debtor made these representations, he knew them to be false and made these representations with the intention to induce Plaintiff to act in reliance on these representations in the manner alleged in this complaint or with the expectation Plaintiff would so act.

31. Plaintiff, at the time these representations were made and at the time he took the actions herein alleged, was ignorant of the falsity of the representations and believed them to be true. In reliance on these representations, Plaintiff was induced to and did, among other things, loan a total of $844,750 to Fremont, $404,750 of which was personally guaranteed by Debtor. Had Plaintiff known the actual facts, he would not have taken such actions. Plaintiff's reliance on these representations was justified because Debtor held himself out as an expert with

1  experience in these types of loans.  Plaintiff lacked the special skills, knowledge, education and

2  experience that Debtor represented he possessed.

3      32.    As a direct and proximate result of the fraudulent conduct of Debtor, Plaintiff has

4  been damaged and is entitled to a money judgment against Debtor in the principal amount of

5  $844,750.00, plus accrued interest, late fees, attorneys' fees and all costs of court, in an exact

6  amount according to proof, together with interest thereon at the maximum rate permitted by law.

7      33.    The conduct of Debtor, as herein alleged, was done with a conscious disregard of

8  Plaintiff's rights, as he knew, by virtue of his fiduciary relationship with Plaintiff that his

9  conduct would impose a great financial hardship on Plaintiff and was likely to expose him to

10  ruinous circumstances, and yet Debtor acted with the intent to harass, vex, injure, and/or annoy

11  Plaintiff so as to constitute oppression, fraud or malice under Civil Code Section 3294, entitling

12  Plaintiff to punitive damages in an amount appropriate to punish or make an example of Debtor

13  and deter future misconduct.

14      34.    As a result of the aforementioned conduct, the debt owed to Plaintiff by Debtor on

15  the Promissory Notes, in the principal amount of $844,750.00, plus accrued interest, late fees,

16  punitive damages, attorneys' fees and all costs of court, should be held nondischargeable in

17  bankruptcy and, as such, should be excepted from discharge pursuant to 11 U.S.C.

18  §523(a)(2)(A).

### COUNT II

**(Fraud of Fiduciary – 11 U.S.C. § 523(a)(4))**

21      35.    Plaintiff refers to and incorporates herein by reference, paragraphs 1 through 34,

22  inclusive.

23      36.    By virtue of Debtor's discretionary authority over Plaintiff's investment, his

24  vastly superior knowledge and his professed expertise in these types of investments, Plaintiff, as

25  an unsophisticated investor, placed his full faith and reliance in Debtor's superior knowledge,

26  professed expertise and skill.  Debtor thereby, either voluntarily or by operation of law, became a

27  fiduciary to Plaintiff.  Inherent in and arising from the fiduciary relationship is a duty of

undivided service, loyalty, integrity, candor and utmost good faith owed by Debtor to Plaintiff. Debtor was thereby obligated to perform their respective duties to Plaintiff in a fiduciary manner.

37. Debtor breached his fiduciary duty to Plaintiff by engaging in the acts and omissions alleged herein including, among other things, by recommending that Plaintiff engage in high risk, non-conservative loans for investment purposes, failing to disclose facts material to Plaintiff's decision to loan money to Fremont, failing to timely and honestly communicate with Plaintiff concerning the investment and the status of repayment, failing to provide Plaintiff with balance sheets detailing the assets and collateral held by Fremont to protect Plaintiff's loans, and otherwise breaching his fiduciary duties to Plaintiff as alleged herein.

38. As a direct and proximate result of Debtor's breach of his fiduciary duty, Plaintiff has been damaged and is entitled to a money judgment against Debtor on the Promissory Notes in the principal amount of $844,750.00, plus accrued interest, late fees, attorneys' fees and all costs of court, in an exact amount according to proof, together with interest thereon at the maximum rate permitted by law.

39. The conduct of Debtor as alleged herein was willful and intentional and done with fraud, oppression and/or malice and with a conscious disregard for the rights of Plaintiff. Accordingly, Plaintiff is entitled to an award of exemplary or punitive damages against Debtor in an amount to be determined at trial.

40. As a result of the aforementioned conduct, the debt owed to Plaintiff by Debtor on the Promissory Notes, in the principal amount of $944,750.00, plus accrued interest, late fees, punitive damages, attorneys' fees and all costs of court, should be held nondischargeable in bankruptcy and, as such, should be excepted from discharge pursuant to 11 U.S.C. §523(a)(4).

## COUNT III

**(Willful and Malicious – 11 U.S.C. § 523(a)(6))**

41. Plaintiff refers to and incorporates herein by reference, paragraphs 1 through 40, inclusive.

42. Debtor convinced Plaintiff to loan more than a total of $800,000 to Fremont on four separate occasion over the course of approximately six months through material

1    misrepresentations and omissions of fact as described above.  Plaintiff is informed and believes

2    that Debtor used funds from Plaintiff 's later loans to make payments due on earlier loans by

3    Plaintiff in order to reassure Plaintiff that the investment was secure so that Debtor could

4    convince him to make the final, and by far the largest, loan of $404,750.  Plaintiff is informed

5    and believes that Debtor failed to make loans to Fremont's borrowers with these funds, instead

6    using some or all of the money loaned by Plaintiff for Debtor's own personal use.

7    43.    The conduct of Debtor, as herein alleged, was done with a conscious disregard of

8    Plaintiff's rights, as he knew, by virtue of his fiduciary relationship with Plaintiff that his

9    conduct would impose a great financial hardship on Plaintiff and was likely to expose him to

10   ruinous circumstances, and yet Debtor acted willfully and with malicious intent.

11   44.    As a direct and proximate result of Debtor's conduct, Plaintiff has been damaged

12   and is entitled to a money judgment against Debtor on the Promissory Notes in the principal

13   amount of $844,750.00, plus accrued interest, late fees, attorneys' fees and all costs of court, in

14   an exact amount according to proof, together with interest thereon at the maximum rate

15   permitted by law.

16   45.    The conduct of Debtor as alleged herein was willful and intentional and done with

17   fraud, oppression and/or malice and with a conscious disregard for the rights of Plaintiff.

18   Accordingly, Plaintiff is entitled to an award of exemplary or punitive damages against Debtor in

19   an amount to be determined at trial.

20   46.    Debtor's conduct constitutes a willful and malicious injury to Plaintiff and, as

21   such, the debt owed by Debtor to Plaintiff should be held nondischargeable in bankruptcy

22   pursuant to 11 U.S.C. §523(a)(6).

23

24   WHEREFORE, Plaintiff prays for judgment against Debtor as follows:

25   1.    For compensatory damages according to proof, together with interest thereon at

26   the maximum rate permitted by law;

27   2.    For attorneys' fees and costs of collection as permitted by law and provided for in

28   the Huezo Promissory Note;

3. For punitive damages

4. For cost of suit incurred herein;

5. For this Court to determine that the principal amount owed by Debtor to Plaintiff on the Promissory Notes, plus all accrued interest, late fees, punitive damages, attorneys' fees and costs of court, be held nondischargeable in bankruptcy and, as such, be excepted from discharge under 11 U.S.C. §523(a)(2)(A);

6. For this Court to determine that the principal amount owed by Debtor to Plaintiff on the Promissory Notes, plus all accrued interest, late fees, punitive damages, attorneys' fees and costs of court, be held nondischargeable in bankruptcy and, as such, be excepted from discharge under 11 U.S.C. §523(a)(4);

7. For this Court to determine that the principal amount owed by Debtor to Plaintiff on the Promissory Notes, plus all accrued interest, late fees, punitive damages, attorneys' fees and costs of court, be held nondischargeable in bankruptcy and, as such, be excepted from discharge under 11 U.S.C. §523(a)(6); and

8. For such other and further relief as the Court may deem just and proper.

DATED: September 19, 2011   LEWITT, HACKMAN, SHAPIRO,
MARSHALL & HARLAN

By: _____
PAUL C. BAUDUCCO
Attorneys for Plaintiff JOEY BALL