1  Baruch C. Cohen, Esq. (SBN 159455)
   **LAW OFFICE OF BARUCH C. COHEN**
2      A Professional Law Corporation
   4929 Wilshire Boulevard, Suite 940
3  Los Angeles, California 90010
   (323) 937-4501        Fax (323) 937-4503
4  e-mail: BCC4929@gmail.com
   Linkedin Profile: http://www.linkedin.com/in/baruchcohen
5
   *Attorney For Defendant & Counter-Claimant* VICTOR HUEZO
6

7

8                    **UNITED STATES BANKRUPTCY COURT**
9
                      **CENTRAL DISTRICT OF CALIFORNIA**
10
                       **LOS ANGELES VALLEY DIVISION**
11

12  In re                              | Case No. 2:11-bk-35922-EC
                                       | Adversary # 2-11-ap-02825-EC
13  VICTOR HUEZO,                      | Before the Honorable Ellen Carroll
                                       | Chapter 7
14          Debtor

15

16

17  JOEY BALL,

18          Plaintiff

19  vs.

20  VICTOR HUEZO,

21          Defendant

22
   VICTOR HUEZO,                       DEFENDANT VICTOR HUEZO'S ANSWER
23                                      TO COMPLAINT TO DETERMINE
           Cross-Complainant           NONDISCHARGEABILITY OF DEBT; AND
24                                      COUNTER-CLAIMS AGAINST JOEY BALL
   vs.
25
   JOEY BALL
26
           Cross-Respondent
27

28

F:\DOCS\VICTOR HUEZO\ANSWER COUNTER-CLAIM.wpd
1/10-3:04pm

1    **ANSWER TO COMPLAINT TO DETERMINE NONSDISCHARGEABILITY OF DEBT**

2         TO PLAINTIFF JOEY BALL AND HIS ATTORNEY OF RECORD:

3         Defendant VICTOR HUEZO (hereinafter referred to as "HUEZO") hereby answers the

4    allegations in PLAINTIFF'S COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

5    (the "Complaint") filed by Plaintiff JOEY BALL ("BALL").

6                               **GENERAL DENIAL**

7         HUEZO generally denies each and every allegation of BALL's *Complaint*.

8                               **SPECIFIC DENIALS**

9    1.   In Answer to Paragraph 1 of the Complaint, HUEZO admits the allegations contained
10        therein.

11   2.   In Answer to Paragraph 2 of the Complaint, HUEZO admits the allegations contained
12        therein.

13   3.   In Answer to Paragraph 3 of the Complaint, HUEZO admits the allegations contained
14        therein.

15   4.   In Answer to Paragraph 4 of the Complaint, HUEZO admits the allegations contained
16        therein.

17   5.   In Answer to Paragraph 5 of the Complaint, HUEZO admits the allegations contained
18        therein.

19   6.   In Answer to Paragraph 6 of the Complaint, HUEZO admits the allegations contained
20        therein.

21   7.   In Answer to Paragraph 7 of the Complaint, HUEZO admits that Fremont Investment
22        Holdings Inc. (hereinafter "Fremont") was in the business of lending and a debtor in
23        bankruptcy, Chapter 7 Case No. 2:11-bk-31045-PC and that HUEZO was the Executive
24        Vice President/CEO of Fremont. Except as expressly admitted herein, HUEZO denies each
25        and every allegation contained in paragraph 7 of the Complaint.

26   8.   In Answer to Paragraph 8 of the Complaint, HUEZO denies each and every allegation
27        contained in Paragraph 8 of the Complaint.

28

9.   In Answer to Paragraph 9 of the Complaint, HUEZO denies each and every allegation contained in Paragraph 9 of the Complaint.

10.   In Answer to Paragraph 10 of the Complaint, HUEZO denies each and every allegation contained in Paragraph 10 of the Complaint.

11.   In Answer to Paragraph 11 of the Complaint, HUEZO admits the allegations contained therein.

12.   In Answer to Paragraph 12 of the Complaint, HUEZO admits the allegations contained therein.

13.   In Answer to Paragraph 13 of the Complaint, HUEZO admits that "on or about January 8, 2008, BALL loaned an additional $70,000 to Fremont secured by a promissory note signed by Debtor as Executive Vice-President-CEO of Fremont. The promissory note called for an interest rate of 15% per annum, for monthly payments of $875 per month to be applied to interest first and for the principal balance to be paid in full on or before February 1, 2009. A copy of the January 8, 2008 promissory note is attached as Exhibit "B" and incorporated herein by reference." Except as expressly admitted herein, HUEZO denies each and every allegation contained in paragraph 13 of the Complaint.

14.   In Answer to Paragraph 14 of the Complaint, HUEZO admits the allegations contained therein.

15.   In Answer to Paragraph 15 of the Complaint, HUEZO admits that "on or about February 1, 2008, BALL loaned $130,000 to Fremont secured by a promissory note signed by Debtor as. Executive Vice-President-CEO of Fremont. The promissory note called for an interest rate of 15% per annum, for monthly payments of $1,625 per month to be applied to interest first and for the principal balance to be paid in full on or before March 1, 2009. A copy of the February 1, 2008 promissory note is attached as Exhibit "C" and incorporated herein by reference. Except as expressly admitted herein, HUEZO denies each and every allegation contained in paragraph 15 of the Complaint.

16.   In Answer to Paragraph 16 of the Complaint, HUEZO admits the allegations contained

1    therein.

2    17.    In Answer to Paragraph 17 of the Complaint, HUEZO admits that "the Huezo Promissory

3    Note was executed by Debtor individually, not on behalf of Fremont. Specifically, Debtor

4    signed the note "Victor Huezo- Executive Vice President-CEO Individually and not for

5    Fremont Investment Holdings, Inc. The Huezo Promissory Note called for an interest rate

6    of 15% per annum, for monthly payments of $5,059.37 per month to be applied to interest

7    first and for the principal balance to be paid in full on or before March 1, 2008."  Except as

8    expressly admitted herein, HUEZO denies each and every allegation contained in paragraph

9    17 of the Complaint.

10    18.    In Answer to Paragraph 18 of the Complaint, HUEZO has no information or belief that the

11    allegations in Paragraph 18 are true so HUEZO denies them.

12    19.    In Answer to Paragraph 19 of the Complaint, HUEZO has no information or belief that the

13    allegations in Paragraph 19 are true so HUEZO denies them.

14    20.    In Answer to Paragraph 20 of the Complaint, HUEZO has no information or belief that the

15    allegations in Paragraph 20 are true so HUEZO denies them.

16    21.    In Answer to Paragraph 21 of the Complaint, HUEZO has no information or belief that the

17    allegations in Paragraph 21 are true so HUEZO denies them.

18    22.    In Answer to Paragraph 22 of the Complaint, HUEZO admits the allegations contained

19    therein.

20    23.    In Answer to Paragraph 23 of the Complaint, HUEZO has no information or belief that the

21    allegations in Paragraph 23 are true so HUEZO denies them.

22    24.    In Answer to Paragraph 24 of the Complaint, HUEZO denies each and every allegation

23    contained in Paragraph 24 of the Complaint.

24    25.    In Answer to Paragraph 25 of the Complaint, HUEZO denies each and every allegation

25    contained in Paragraph 25 of the Complaint.

26    26.    In Answer to Paragraph 26 of the Complaint, HUEZO denies each and every allegation

27    contained in Paragraph 26 of the Complaint.

28

27.    In Answer to Paragraph 27 of the Complaint, HUEZO denies each and every allegation contained in Paragraph 27 of the Complaint.

28.    In Answer to Paragraph 28 of the Complaint, HUEZO denies each and every allegation contained in Paragraph 28 of the Complaint.

29.    In Answer to Paragraph 29 of the Complaint, HUEZO has no information or belief that the allegations in Paragraph 29 are true so HUEZO denies them.

30.    In Answer to Paragraph 30 of the Complaint, HUEZO denies each and every allegation contained in Paragraph 30 of the Complaint.

31.    In Answer to Paragraph 31 of the Complaint, HUEZO denies each and every allegation contained in Paragraph 31 of the Complaint.

32.    In Answer to Paragraph 32 of the Complaint, HUEZO denies each and every allegation contained in Paragraph 32 of the Complaint.

33.    In Answer to Paragraph 33 of the Complaint, HUEZO denies each and every allegation contained in Paragraph 33 of the Complaint.

34.    In Answer to Paragraph 34 of the Complaint, HUEZO has no information or belief that the allegations in Paragraph 34 are true so HUEZO denies them.

35.    In Answer to Paragraph 35 of the Complaint, HUEZO has no information or belief that the allegations in Paragraph 35 are true so HUEZO denies them.

36.    In Answer to Paragraph 36 of the Complaint, HUEZO denies each and every allegation contained in Paragraph 36 of the Complaint.

37.    In Answer to Paragraph 37 of the Complaint, HUEZO denies each and every allegation contained in Paragraph 37 of the Complaint.

38.    In Answer to Paragraph 38 of the Complaint, HUEZO denies each and every allegation contained in Paragraph 38 of the Complaint.

39.    In Answer to Paragraph 39 of the Complaint, HUEZO denies each and every allegation contained in Paragraph 39 of the Complaint.

40.    In Answer to Paragraph 40 of the Complaint, HUEZO denies each and every allegation

1     contained in Paragraph 40 of the Complaint.

2   41.     In Answer to Paragraph 41 of the Complaint, HUEZO has no information or belief that the

3     allegations in Paragraph 41 are true so HUEZO denies them.

4   42.     In Answer to Paragraph 42 of the Complaint, HUEZO denies each and every allegation

5     contained in Paragraph 42 of the Complaint.

6   43.     In Answer to Paragraph 43 of the Complaint, HUEZO denies each and every allegation

7     contained in Paragraph 43 of the Complaint.

8   44.     In Answer to Paragraph 44 of the Complaint, HUEZO denies each and every allegation

9     contained in Paragraph 44 of the Complaint.

10   45.     In Answer to Paragraph 45 of the Complaint, HUEZO denies each and every allegation

11     contained in Paragraph 45 of the Complaint.

12   46.     In Answer to Paragraph 46 of the Complaint, HUEZO has not information or belief that the

13     allegations in Paragraph 46 are true so HUEZO denies them.

14 **<u>AFFIRMATIVE DEFENSES</u>**

15 <u>FIRST AFFIRMATIVE DEFENSE</u>

16     HUEZO alleges that many paragraphs in BALL's *Complaint* are so vague, ambiguous,

17 confusing and convoluted that HUEZO cannot reasonably be required to frame a responsive

18 pleading to them.

19 <u>SECOND AFFIRMATIVE DEFENSE</u>

20     HUEZO alleges that BALL's *Complaint* failed to state facts sufficient to constitute a cause

21 of action against HUEZO.

22 <u>THIRD AFFIRMATIVE DEFENSE</u>

23     HUEZO alleges that the claims of BALL are dischargeable as there was no non-

24 dischargeable event. The weight of case law states that the statute should be strictly construed

25 against the objecting creditor and liberally in favor of the Debtor.

26     Pursuant to 11 U.S.C. §524(a)(1) and (2), this discharge should also serve to void any

27 future judgment to determine the personal liability of HUEZO and operate as a permanent

28

1  injunction against any actions whether commenced pre-petition or post-petition.

2      Pursuant to 11 U.S.C. §523(d), should the Debtor/HUEZO succeed in discharging the debt,

3  and the court concludes that BALL's lawsuit was not substantially justified, HUEZO shall recover

4  costs and attorneys fees in defending the suit.

5                          FOURTH AFFIRMATIVE DEFENSE

6      HUEZO alleges that BALL is barred from any recovery against HUEZO because his

7  alleged damages are speculative.

8                           FIFTH AFFIRMATIVE DEFENSE

9      HUEZO alleges that BALL's Complaint, and each and every cause of action therein, is

10  barred as against HUEZO because the damages sustained by BALL, if any, were proximately

11  caused by the acts, omissions, negligence, theft, fraud, and/or breach of obligations by persons or

12  entities other than HUEZO.

13                          SIXTH AFFIRMATIVE DEFENSE

14      HUEZO alleges that BALL's Complaint, and each and every cause of action therein, is

15  barred as against HUEZO because BALL failed to exercise reasonable and ordinary care, caution,

16  or prudence for their own benefit in order to avoid the claims alleged in its Complaint. The

17  resulting harm, if any, sustained by BALL were proximately caused and contributed to by the

18  negligence of BALL.

19                         SEVENTH AFFIRMATIVE DEFENSE

20      HUEZO alleges that BALL's Complaint, and each and every cause of action therein, is

21  barred as against HUEZO because BALL failed to mitigate his damages.

22                          EIGHTH AFFIRMATIVE DEFENSE

23      HUEZO alleges that BALL's Complaint, and each and every cause of action therein, is

24  barred as against HUEZO because BALL's claims are based on usurious interest rates. BALL

25  engaged in the illegal business practice of arranging promissory notes which is in excess of rates

26  stated in the California Constitution, Article XV, section 1 which limits lenders and  creditors like

27  BALL from charging more than 10% per year.

28

1   <u>NINTH AFFIRMATIVE DEFENSE</u>

2   HUEZO alleges that BALL's Complaint, and each and every cause of action therein, is

3   barred as against HUEZO because BALL's claims are subject to offset in the amount of any

4   benefits actually received by BALL.

5   **<u>PRAYER FOR RELIEF</u>**

6   WHEREFORE, HUEZO prays that the Court issue the following judgment:

7   1.   That the BALL takes nothing by his *Complaint*, and that said *Complaint* be dismissed with

8        prejudice;

9   2.   That the Court determine HUEZO's debt to BALL to be dischargeable;

10  3.   The Court award HUEZO's costs and reasonable fees in an amount which will be

11       ascertained at trial, pursuant to 11 U.S.C. §523(d) and F.R.B.P. 9011;

12  4.   The Court sanction BALL and counsel for filing and maintaining this frivolous lawsuit in

13       an amount which will be ascertained at trial; and

14  5.   For such other and further relief as the Court may deem just and proper.

15  -----------

16  **<u>COUNTERCLAIMS BY VICTOR HUEZO AGAINST JOEY BALL</u>**

17  Counter-Claimant Victor Huezo allege as counterclaims, as follows:

18  **<u>THE PARTIES</u>**

19  1.   Counter-Claimant Victor Huezo is at all times relevant to hereto an individual residing in

20       the State of California, County of Los Angeles. On or about June 16,2011, a voluntary

21       Chapter 7 bankruptcy petition was filed in the United States Bankruptcy Court for the

22       Central District of California, case no.2:11-BK-35922- PC for Victor Huezo.

23  2.   Counter-Respondent Joey Ball is at all times relevant to hereto an individual residing in the

24       State of California, County of Los Angeles.

25  3.   Fremont Investment Holdings Inc ("Fremont") is at all times relevant hereto a California

26       corporation with its principal place of business in Los Angeles, California. On or about

27       June 15,2011, a voluntary Chapter 7 bankruptcy petition was filed in the United States

28

1    Bankruptcy Court for the Central District of California, case no.2:11bk-31045-PC for

2    Fremont Investment Holdings Inc.

3    4.    On or about September 27,2011, BALL filed a complaint to Determine Dischargeability of

4    debt ("Complaint") in the United States Bankruptcy Court for the Central District of

5    California, case no.2:11-BK-35922-PC for Victor Huezo.

6    <u>**THE PROMISSORY NOTES**</u>

7    5.    On or about November 28, 2007, BALL loaned $240,000 to Fremont secured by  a

8    promissory note signed by HUEZO as Executive Vice-President-CEO of Fremont.  The

9    un-secured promissory note called for a interest rate of 15% per annum and the funds were

10    wired to a Fremont checking account by BALL.

11    6.    On or about January 8, 2008, BALL loaned an additional $70,000 to Fremont secured by a

12    promissory note signed by HUEZO as Executive Vice-President-CEO of Fremont. The

13    un-secured promissory note called for an interest rate of 15% per annum and the funds were

14    wired to a Fremont checking account by BALL via two transfers.

15    7.    On or about February 1, 2008, BALL loaned $130,000 to Fremont secured by a promissory

16    note signed by HUEZO as Executive Vice-President-CEO of Fremont. The un-secured

17    promissory note called for an interest rate of 15% per annum and the funds were wired to a

18    Fremont checking account by BALL.

19    8.    Collectively the three (3) un-secured promissory notes between BALL and Fremont are

20    known as the Fremont Promissory Notes and HUEZO is informed and believes and thereon

21    alleges that he is not personally liable for these said Fremont Promissory Notes ("3 Fremont

22    Promissory Notes").

23    9.    The funds as shown in the 3 Fremont Promissory Notes went directly to Fremont and

24    HUEZO only signed these Fremont Promissory Notes as a active corporate officer and not

25    individually.

26    10.    HUEZO is further informed and believes and thereon alleges that BALL understood that

27    HUEZO was not personally liable for any of the 3 Fremont Promissory Notes.

28

11.     On or about March 21, 2008, BALL loaned $404,750 to HUEZO secured by a un-secured promissory note signed by HUEZO as "Victor Huezo - Executive Vice President-CEO Individually and not for Fremont Investment Holdings, Inc. (the "Huezo Promissory Note"). The Huezo Promissory Note called for an interest rate of 15% per annum and the funds were wired to a Fremont checking account by BALL as HUEZO through a March 25, 2008 an email directed BALL to "wire the money via the Fremont Investment Holdings Account to avoid any bank delays of having the money go to my personal account and then to the Fremont account."

12.     HUEZO is informed and believes and thereon alleges that BALL, a creditor, understood that HUEZO, the borrower to the Huezo Promissory Note, was in responsible for the Huezo Promissory Note and wired the funds to HUEZO via a Fremont Investment Holdings Inc. checking account to help avoid any delays.

13.     In accordance to the terms and the understanding by BALL that the only loan HUEZO was personally liable for was the Huezo Promissory Note, BALL filed a writ of attachment application on or about May 11,2011 in the Los Angeles Superior Court case number BC460985 to demand an amount to be secured by the attachment equal to $491,296.99.

14.     BALL's declaration submitted with the writ of attachment on paragraph 19 shows a breakdown of the money BALL states HUEZO owes him.

15.     HUEZO is informed and believes and thereon alleges that BALL through his declaration submitted in support of the writ of attachment application and understands that the most HUEZO may be personally liable for, which HUEZO denies, is nothing more than the Huezo Promissory Note.

**COMMON ALLEGATIONS**

Counter-Claimant VICTOR HUEZO (hereinafter referred to as "HUEZO") hereby counter-claims against JOEY BALL ("BALL").

16.     HUEZO is informed and believes and thereon alleges that between 2006 to 2010, BALL

1    engaged in the illegal business practice of arranging promissory notes which is in excess of

2    rates stated in the California Constitution, Article XV, section 1 which limits lenders and

3    creditors like BALL from charging more than 10% per year.

4    17.    HUEZO is informed and believes, and thereon alleges that BALL is not exempt from the

5    usury provisions of the California Constitution, California Financial Code section 22002 or

6    the California Finance Lenders Law which regulates interest on loans and judgments.

7    18.    HUEZO is informed and believes, and thereon alleges, that BALL has routinely, repeatedly,

8    and willfully financed loans with interest rates in excess of the rates allowed by the

9    California Constitution, in violation of California's usury law.  Moreover, BALL in

10    violation of the California Finance Lender Law has engaged in the business of finance

11    lender without licenses from the commissioner to do so.

12    19.    Most licensed lending institutions engaged in the business of making consumer and/or

13    commercial loans such as banks, savings and loan, credit unions, finance companies, and

14    even pawn brokers are exempt from California's usury laws, See, California Financial Code

15    §5 102, §7675 §15000, §21000, §21200, §22002, §22009, and §22303; Home Owners

16    Loan Act of 1933, 12 U.S.C.A §1464(5)(c)(4)(B) and the Building and Loan Association

17    Act of 1931 (as amended). In this case, BALL is not a licensed lending institutions engaged

18    in the business of making consumer and/or commercial loans (he's an individual) and is

19    therefore not exempt from California's usury laws.

20    20.    A loan made to a California business (corporation, or limited liability company) that has

21    2,000,000 or More in Assets that is for $300,000 or More is exempt from California's usury

22    law but not if it that loan personally signed by an individual.

23    21.    HUEZO is informed and believes, and thereon alleges, that BALL is aware that the interest

24    rate charged to HUEZO exceeds statutory legal limit and is usurious.

25    22.    HUEZO is informed and believes, and thereon alleges, that BALL is aware that the March

26    21, 2008 Promissory Note is not exempt from the usury law.

27    23.    HUEZO is informed and believes, and thereon alleges, that BALL has a history of charging

28

1  usurious interest rates greater than the legal limit.

2  24.  HUEZO is informed and believes, and thereon alleges, that BALL has a history ofcharging

3  usurious interest rates higher than the legal limit, as evident on the August 14, 2007

4  promissory note signed by Keenan Towns in favor of Joey Ball.

5  25.  HUEZO is informed and believes, and thereon alleges, that BALL a 40 year old man, who

6  states in paragraph 36 of the Complaint that "BALL, as an unsophisticated investor, placed

7  his full faith and reliance in Debtor's superior knowledge, professed expertise and skill." is

8  a indeed a savvy experienced lender and a seasoned licensed Department of Real Estate

9  salesperson with over 8 years experience in conducting financial transactions.

10  26.  HUEZO is informed and believes, and thereon alleges, that BALL, who worked as a real

11  estate salesperson for Fremont from July 2007 to 2011 was involved in transacting loans to

12  borrowers and understood all of the risk involved.  BALL is further informed and believes,

13  and thereon alleges, that BALL submitted loan request for his clients as he understood the

14  types of loans Fremont and HUEZO made.

15  27.  HUEZO is informed and believes, and thereon alleges, that BALL knew that HUEZO did

16  not become a licensed real estate broker until February 15, 2011.

17  28.  HUEZO is informed and believes, and thereon alleges, that BALL submitted a declaration

18  on June 18, 2010 as he was aware of the collection efforts being done by Fremont and

19  HUEZO.

20  **FIRST CLAIM FOR RELIEF (For Breach of Contract)**

21  29.  BALLs repeats, realleges and embodies herein by this reference paragraphs 1-[] above, as if

22  fully set forth herein.

23  30.  On March 21, 2008 and continuing thereon BALL, Joey Ball, and HUEZO, Victor Huezo

24  (borrower), entered into a written promissory note ("Promissory Note") whereby Huezo

25  agreed to pay BALL in exchange for value received the sum of the amount of $404,750.

26  31.  Borrower signed a promissory note on March 21, 2008 as "Victor Huezo-Executive Vice

27  President-CEO Individually and not for Fremont Investment Holdings Inc." in favor of

28

creditor Joey Ball.  Specifically, pursuant to Section 5C of the Promissory note identified as Notice of Default, which both parties prepared together, states that "If Borrower is in Default, the Lender may send Borrower written notice of said Default and demand immediate payment of the total remaining Principal Balance and any and all interest that has accrued and is due if Default is not cured within 60 days."

32.  Furthermore, the Promissory Note under Section 6 identified as Notices states that "All notices, requests, demands or other communications required or permitted by the terms of this Note shall be given in writing and delivered to the parties of this Note as follows: Fremont Investment Funding Attention: Victor Huezo 9401 Wayside Drive, Shadow Hills, CA 91040 and Joey Ball Beechglen Drive La Crescenta, CA 91214."

33.  Joey Ball breached the Promissory Note by (a) failing to provide Borrower with a Notice of Default as required by section 5C; (b) failing to give HUEZO 60 days to cure said default; (c) failing to send written notice of said default to Fremont Investment Funding Attention: Victor Huezo 9401 Wayside Drive Shadow Hills, CA 91040; and (d) filing lawsuit BC460985 in the Los Angeles Superior Court on May 5, 2011 before giving the HUEZO 60 days to cure said default.  As a result, HUEZO has been denied a good faith opportunity, pursuant to the promissory note, to avoid acceleration and the action in the Superior State Court.

34.  The Promissory Note is an enforceable contract between BALL, a creditor and HUEZO, a debtor.

35.  HUEZO is informed and believes, and thereon alleges, that it has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of said Promissory Note, except for those conditions and covenants for which performance by BALL was excused.

36.  As a result of the breach by Joey Ball, HUEZO has suffered, and will continue to suffer reasonable attorneys' fees and costs permitted under Section 5D of Note and treble damages as permitted under California Usury Law.

**SECOND CLAIM FOR RELIEF (For Fraud-Intentional Misrepresentation)**

37.    BALLs repeats, realleges and embodies herein by this reference paragraphs 1-[] above, as if fully set forth herein.

38.    HUEZO is informed and believes, and thereon alleges, that on or about March 21, 2008 and from then forward, BALL, intentionally and repeatedly misrepresented to HUEZO that all payments made by Fremont Investment Holdings Inc. ("Fremont") would apply to the March 21, 2008 Promissory note before applying to the Fremont November 2007 promissory note, the Fremont January 2008 promissory note, and the Fremont February 2008 promissory note (collectively "Fremont Notes")  if HUEZO signed the March 21, 2008 promissory note as Victor Huezo-Executive Vice President-CEO Individually and not for Fremont Investment Holdings Inc.

39.    HUEZO is informed and believes, and thereon alleges, that on or about March 28, 2008, BALL was audited by the Internal Revenue Service for; (a) non-payment of capital gain taxes; (b) failure to disclose the sale and profits made on a investment property located near or in Tujunga, California; (c) failure to report cash income made at four Paradise Tan tanning salons located in the cities of Montrose, La Crescenta, Sunland and Valencia, California; (d) failure to report income made from loans made to individuals;(e) failure to disclose gift funds in excess of $150,000 made to family members; and (f) failure to report W2 or 1099 Misc. employee wages to the Internal Revenue Service and the Franchise Tax Broad as BALL was paying employees in cash.

40.    HUEZO is informed and believes, and thereon alleges, that on or about April 16, 2008 and from then forward, BALL, intentionally and repeatedly misrepresented to HUEZO that there were no interest payments owed on the Fremont Notes for the remainder of 2008 if HUEZO did not return any principal balance to BALL during BALL's Internal Revenue Service 2008 audit.

41.    HUEZO is informed and believes, and thereon alleges, that on or about April 16, 2008, BALL personally, without any other payroll employee or third party help, received, signed

1    and cashed the "final payment for notes prior to March 20, 2008 for 2008", as shown in the

2    Fremont Investment Holdings Inc. check number 1063 in the amount of Nine Thousand Six

3    Hundred and Twenty-Five ($9,625) to further intentionally and repeatedly misrepresent to

4    HUEZO that there were no interest payments owed on the Fremont Notes for the remainder

5    of 2008 and that the payment would be applied to the March 21, 2008 Promissory Note.

6    42.    HUEZO is informed and believes, and thereon alleges, that on or about May 1, 2008,

7    BALL personally, without any other payroll employee or third party help, received, signed

8    and cashed check number 1067 in the amount of Nine Thousand Nine Hundred and

9    Sixty-Six Dollars ($9,966) to further intentionally and repeatedly misrepresent to HUEZO

10    that there were no interest payments owed on the Fremont Notes for the remainder of 2008

11    and that the payment would be applied to the March 21, 2008 Promissory Note.

12    43.    HUEZO is informed and believes, and thereon alleges, that on or about June 2, 2008,

13    BALL personally, without any other payroll employee or third party help, received, signed

14    and cashed check number 1086 in the amount of Nine Thousand Nine Hundred and

15    Sixty-six Dollars ($9,966) to further intentionally and repeatedly misrepresent to HUEZO

16    that there were no interest payments owed on the Fremont Notes for the remainder of 2008

17    and that the payment would be applied to the March 21, 2008 Promissory Note.

18    44.    HUEZO is informed and believes, and thereon alleges, that on or about July 1, 2008, BALL

19    personally, without any other payroll employee or third party help, received, signed and

20    cashed check number 1067 in the amount of Nine Thousand Nine Hundred and Sixty-six

21    Dollars ($9,966) to further intentionally and repeatedly misrepresent to HUEZO that there

22    were no interest payments owed on the Fremont Notes for the remainder of 2008 and that

23    the payment would be applied to the March 21, 2008 Promissory Note.

24    45.    HUEZO is informed and believes, and thereon alleges, that on or about August 15, 2008,

25    BALL accepted a wire transfer in the amount of One Hundred Thousand Dollars

26    ($100,000) to further intentionally and repeatedly misrepresent to HUEZO that there were

27    no interest payments owed on the Fremont Notes for the remainder of 2008 and that the

28

1    payment would be applied to the March 21, 2008 Promissory Note.

2    46.    As set forth above, HUEZO is informed and believes, and thereon alleges, that BALL

3    fraudulently induced HUEZO to believe the promise that the remaining four (4) payments

4    in the amount of One Hundred and Twenty Nine Thousand Dollars ($129,898) payments

5    made after April 16, 2008 for the remainder of 2008 were applied to the interest and

6    principal payments owed on the March 21, 2008 promissory note.

7    47.    HUEZO is informed and believes, and thereon alleges, that on or about September 16,

8    2009, BALL directed HUEZO to pay Manuel Duran the sum of Three Thousand Five

9    Hundred ($3,500) for the construction of an un-permitted guest house located at BALLs

10    house to further intentionally and repeatedly misrepresent to HUEZO that the payment

11    would be applied to the March 21, 2011 promissory note. BALL acknowledges the payment

12    on his ledger where he states, "…Vic gave Manuel a check for $3,500 #1383 for some work

13    on the guest house."

14    48.    HUEZO is informed and believes, and thereon alleges, that on or about October 28, 2009,

15    BALL directed HUEZO to help recover insurance payments for property damage caused by

16    his mystic tanning bed and income loss at his Sunland, California Paradise Tan salon to

17    further intentionally and repeatedly misrepresent to HUEZO that Twenty-Five percent

18    (25%) of the total cash value of the claim recovered would be applied to the March 21,

19    2011 promissory note.

20    49.    HUEZO is informed and believes, and thereon alleges, that on or about December 9, 2009,

21    BALL through HUEZOs efforts collected $52,573.25.  In this case HUEZO earned

22    $13,143.31 (25% X $52,573.25=$13,143.31) that BALL intentionally and repeatedly

23    misrepresent to HUEZO would be applied to the March 21, 2011 promissory note.

24    50.    HUEZO is informed and believes, and thereon alleges, that on or about January 13, 2010,

25    BALL through HUEZOs efforts collected $86,703.20.  In this case HUEZO earned

26    $21,675.80 (25% X $86,703.20=$21,675.80) that BALL intentionally and repeatedly

27    misrepresent to HUEZO would be applied to the March 21, 2011 promissory note.

28

51.  In reliance on these material misrepresentations, and not knowing the material facts, BALL concealed from HUEZO that BALL had no intentions of applying the five (5) payments made in 2008 and the insurance recovery income earned by BALL through HUEZOs efforts would be applied to the principal and interest payments owed to the March 21, 2008 promissory note.

52.  HUEZO did not discover the alleged misrepresentations and/or concealment until on or about September 27, 2011 or shortly after, when HUEZO became aware for the first time that BALL filed complaint number 2:11-BK-35922 ("Complaint") to determine dischargeability of debt in the United States Bankruptcy Court Central District of California Los Angeles Division, whereas BALL demanded "in the principal amount of $944,750, plus accrued interest" as shown in paragraph 40 of the Complaint and did not deduct the One Hundred and Twenty Nine Thousand Dollars ($133,398) and the Thirty Four Thousand Eight Hundred and Nine-Teen 11/100 Dollars ($34,819.11) in income earned by HUEZO from BALL's calculation demanded above.

53.  Under the strictest standard of liability, this "paper trail" indisputably evidences conduct by the BALL that is fraudulent.

54.  As a proximate cause of BALL misrepresentations and/or concealment, HUEZO has suffered, and will continue to suffer, damages to be proven at the time of trial.

55.  Based on affirmative misrepresentations, negligent misrepresentations and documentary fraud, the BALL is guilty of concealment or non-disclosure by means of suppression of a material fact or facts.

56.  The aforementioned conduct by BALL was intentional, fraudulent, and intended to consciously disregard the rights of HUEZO and done with the intent to vex, annoy and with malice such as to justify an award of punitive and exemplary damages in a sum and amount to be proven at trial.

**THIRD CLAIM FOR RELIEF (For Fraud-Concealment)**

57.  HUEZO repeats, realleges and embodies herein by this reference paragraphs 1-[] above, as

1    if fully set forth herein.

2    58.    HUEZO is informed and believes, and thereon alleges, that on or about October 28, 2009,

3    BALL intentionally concealed from HUEZO that he had no intentions of paying HUEZO

4    for services provided to recover insurance money for property damage and loss of income

5    caused to BALL business Paradise Tan Salon in 8325 Foothill Blvd.  Sunland, California.

6    59.    As set forth above, HUEZO is informed and believes, and thereon alleges, that BALL

7    fraudulently induced HUEZO to believe the promise that Twenty-Five percent of the total

8    $139,276.45 collected through HUEZOs efforts from York Insurance Company, would be

9    applied to any outstanding interest or principal balance owed by HUEZO. BALL

10    acknowledges the insurance recovery work done by HUEZO via email on April 22, 2010,

11    where he states, "…do I write off the fee's for what you are charging me for the work you

12    did for Paradise."

13    60.    HUEZO is informed and believes, and thereon alleges, that on or about July 16, 2009,

14    BALL intentionally concealed from HUEZO that he had no intentions of applying the

15    payment in the amount of Three Thousand Five-Hundred Dollars ($3,500) made to Manuel

16    Duran for the construction of a new un-permitted guesthouse located at BALLs house to

17    any outstanding interest or principal balance owed on the March 21, 2008 note.

18    61.    As set forth above, HUEZO is informed and believes, and thereon alleges, that BALL

19    fraudulently induced HUEZO to believe the promise that the payment in the amount of

20    $3,500 made to Manuel Duran would be applied to the any outstanding debt owed by

21    HUEZO to BALL.  BALL acknowledges the payment on his ledger where he states, "…Vic

22    gave Manuel a check for $3,500 #1383 for some work on the guest house."

23    62.    HUEZO did not discover the alleged misrepresentations and/or concealment until on or

24    about September 27, 2011 or shortly after, when HUEZO became aware for the first time

25    that BALL filed complaint number 2:11-BK-35922 ("Complaint") to determine

26    dischargeability of debt in the United States Bankruptcy Court Central District of California

27    Los Angeles Division, whereas BALL demanded "in the principal amount of $944,750,

28

1  plus accrued interest" as shown in paragraph 40 of the Complaint and BALL did not reduce

2  the payments made to Manuel Duran and the income earned by HUEZO for helping BALL

3  recover insurance monies for the property damage and loss of income on his Paradise Tan

4  location from the outstanding March 21, 2008 Promissory Note balance.

5  63.    Under the strictest standard of liability, this "paper trail" indisputably evidences conduct by

6  the BALL that is fraudulent.

7  64.    As a proximate cause of BALL misrepresentations and/or concealment, HUEZO has

8  suffered, and will continue to suffer, damages to be proven at the time of trial.

9  65.    Based on affirmative misrepresentations, negligent misrepresentations and documentary

10  fraud, the BALL is guilty of concealment or non-disclosure by means of suppression of a

11  material fact or facts.

12  66.    The aforementioned conduct by BALL was intentional, fraudulent, and intended to

13  consciously disregard the rights of HUEZO and done with the intent to vex, annoy and with

14  malice such as to justify an award of punitive and exemplary damages in a sum and amount

15  to be proven at trial.

16  **FOURTH CLAIM FOR RELIEF (For Usurious Interest Rates Charged)**

17  67.    HUEZO repeats, realleges and embodies herein by this reference paragraphs 1-[] above, as

18  if fully set forth herein.

19  68.    In committing the acts complained of herein, BALL has been unlawfully and unjustly

20  enriched at the expense of HUEZO because he has purported to charge and collect from

21  HUEZO, an individual, a 15% interest on the $404,750 March 21, 2008 Promissory Note

22  which is in excess of rates stated in the California Constitution, Article XV, section 1

23  which limits lenders from charging more than 10% per year.

24  69.    HUEZO is informed and believes, and thereon alleges that BALL is not exempt from the

25  usury provisions of the California Constitution, California Financial Code section 22002 or

26  the California Finance Lenders Law which regulates interest on loans and judgments.

27  70.    HUEZO is informed and believes, and thereon alleges, that BALL has routinely, repeatedly,

28

1    and willfully financed loans with interest rates in excess of the rates allowed by the

2    California Constitution, in violation of California's usury law.  Moreover, BALL in

3    violation of the California Finance Lender Law has engaged in the business of finance

4    lender without licenses from the commissioner to do so.

5    71.    HUEZO is informed and believes, and thereon alleges, that BALL is aware that the 15%

6    interest rate charged to HUEZO exceeds statutory legal limit and is usurious.

7    72.    HUEZO is informed and believes, and thereon alleges, that BALL is aware that the March

8    21, 2008 Promissory Note is not exempt from the usury law.

9    73.    HUEZO is informed and believes, and thereon alleges, that BALL is aware that HUEZO

10    was not was not a broker at the time the March 21, 2008 loan was arranged nor did a

11    designated officer from Fremont Investment Holdings Inc. acting as a broker get involved

12    in arranging the March 21, 2008 Promissory Note.

13    74.    HUEZO is informed and believes, and thereon alleges, that BALL; (a) is party to a usurious

14    promissory note dated March 21, 2008; (b) the interest payment of 15% exceeds the

15    statutory maximum; (c) the loan and interest are absolutely repayable by HUEZO as BALL

16    demands in complaint; and (d) BALL, who has a history of making usurious loans, had a

17    willful intent to enter into a usurious transaction with HUEZO.

18    75.    HUEZO is informed and believes, and thereon alleges, that BALL has a history of charging

19    usurious interest rates higher than the legal limit, as evident on the August 14, 2007

20    promissory note signed by Keenan Towns in favor of Joey Ball.

21    76.    HUEZO is informed and believes, and thereon alleges, that BALL, a licensed Department

22    of Real Estate Salesperson since March 1993, is fully aware of the governing laws that

23    prohibit the abuse of non-exempt individuals from charging usurious interest rates higher

24    than the legal limit.

25    77.    As pattern and practice of abuse and disregard of HUEZOs rights which prohibit BALL

26    from charging usurious interest rates, BALL has been further unjustly enriched at the

27    expense of HUEZO. BALL has charged and/or collected payments from HUEZO for

28

1    usurious interest rates and predatory lending charges that are not authorized by or in

2    conformity with the legal limits.  BALL wrongfully added and continues to unilaterally add

3    these illegal charges to the balance BALL claims is due and owing under the March 21,

4    2008 promissory note.

5    78.    HUEZO is informed and believes, and thereon alleges, that HUEZO paid  during the two

6    year period preceding the state court action filed on May 5, 2011 a total amount of usurious

7    interest and principle payments calculated as follows:

8    $404,750 Original principle balance

9    -$89,423.01 Principle reduction payments made in 2008

10    -$40,474.96 usurious 2008 interest

11    -$42,998.47 principal reduction payments in 2009

12    -$41,227.80 Usurious 20009 interest payments

13    -$16,406.15 principal reduction payments in 2010

14    -$85,781.55 usurious 2010 interest payments ($28,328.25 X 3= $84,984.75)

15    The calculation of principle owing through December 31, 2010 is $88,438.06 not including

16    punitive damages or other income applied to outstanding note. If BALL is allowed to collect

17    monies from his unlawful practices, as alleged herein, he will be unjustly enriched by profits

18    from his own wrongdoings and retain monies he is not entitled to keep.  As a direct and

19    proximate result of BALLs' conduct as alleged herein, HUEZO will have been damaged.

20    79.    By reason of the foregoing, HUEZO is entitled to restitution and/or disgorgement of all

21    profits obtained by BALL as a result of his own wrongful conduct HUEZO should be

22    entitled to the following cumulative remedies: (1) money damages for ALL the interest

23    previously paid during the two year period preceding the filing of an action, not just the

24    usurious amount. See, Stock v. Meek, 35 Cal. 2d 809 (1950) and Bayne v. Jolley, 227

25    CA2d 630 (1964); (2) damages equal to three times the usurious interest paid during the

26    one year period preceding the filing of a lawsuit, and after filing of the lawsuit, even if that

27    amount exceeds the outstanding principal. (See, California Civil Code § 1916-3(a); Shirley

28

1    v. J3ritt, 152 Cal. App. 2d 666, 670 (1957); Burr v. Capital Reserve Corp, 71 Cal. 2d 983,

2    994 (1969) (within courts discretion to award treble damages); and Handi Investment

3    Company v. Mobil Oil Corporation, 653 F.2d 391 (1981)); & (3) the HUEZO will get a

4    judgment to cancel all future interest that will become due for the remainder of the term of

5    the loan. Further, BALL's willful violation of the usury laws should also expose the BALL

6    to criminal liability as BALL knowingly and willfully, charged a usurious interest rate, and

7    should be found guilty of "loan sharking" which is a felony and punishable by up to five

8    years in jail.

9    **FIFTH CLAIM FOR RELIEF (Abuse of Process)**

10    80.    HUEZO repeats, realleges and embodies herein by this reference paragraphs 1-[] above, as

11    if fully set forth herein.

12    81.    HUEZO realleges as though fully set forth here at and incorporate herein by  reference all

13    of the allegations contained in paragraphs 1 through 43, inclusive.  On or about May 5,

14    2010, BALL used a writ of attachment filed with the Los Angeles Superior Court in a

15    manner and for a purpose not authorized by law as the March 21, 2008 Promissory Note is

16    an illegal contract for it contained usurious interest rates of 15%.

17    82.    Furthermore, BALL misused the writ of attachment process to prevent HUEZO from

18    selling 443 North Brannick Los Angeles, California ("Property") so that HUEZO could not

19    cure the said default of the March 21, 2008 Promissory Note and so that HUEZO could not

20    bring an action for money had and received to recover usurious interest paid within two

21    years of the May 5, 2010 suit filed by the BALL.

22    83.    In addition, BALL was aware that the first notice of default was sent by BALL's counsel on

23    April 6, 2011 and BALL refused to give HUEZO the required 60 days to cure said default

24    in order to prevent HUEZO from make any more usurious interest payments on the

25    outstanding March 21, 2008 promissory note.

26    84.    BALL did not give HUEZO 60 days to cure the notice of default as stated in section 5C of

27    the promissory note.

28

85.  The ulterior purpose and motivation of BALL in so misusing the process in the above-described manner was to unlawfully coerce HUEZO to pay BALL $948,499.96, which BALL falsely claim HUEZO owes him on a March 21, 2008 promissory note signed by HUEZO and not recover usurious interest paid within two years of the suit.

86.  As a proximate result of the actions of BALL, HUEZO had great difficulty in curing the March 21, 2008 note and ultimately was forced to file a bankruptcy for his corporation Fremont Investment Holdings Inc. and for himself, and HUEZO has been generally damaged.

87.  As a further proximate result of BALLs actions, HUEZO was not able to cure the note within the allowable 60 days and HUEZO was not able to recover treble for usurious interest payments paid.

88.  At all times mentioned herein, BALL acted willfully with the wrongful intention of injuring HUEZO and from an improper or evil motive amounting to malice, because BALL knew that HUEZO could not cure the default once the writ of attachment was filed and that HUEZO could not bring an action to recover usurious interest paid within two years of suit. Further, BALL knew before he filed his writ of attachment that he never gave HUEZO 60 days to cure the default but instead lead the HUEZO on to spend valuable resources in collection efforts.

89.  HUEZO is informed and believes, and thereon alleges, that BALL submitted a declaration stating that beginning in April 2010 and continuing thereafter on May 13, 2010 he gave written notice of HUEZO's default on the Promissory Notes including the March 21, 2008 and demanded payment, yet on May 18, 2010 BALL sent HUEZO an email stating that he needs a copy of the March 2008 promissory note. BALL admits that he never sent proper notice of default to HUEZO as he could not locate the  Promissory note to read where he needed to send the demand to.

90.  BALL conduct described herein was intended by the BALL to cause injury to HUEZO or was despicable conduct carried on by the BALL with a willful and conscious disregard of

1    the rights of HUEZO as shown in section 5C of the Promissory, or subjected HUEZO to

2    cruel and unjust hardship in conscious disregard of HUEZOs' rights with the intention to

3    deprive HUEZO of property, legal rights, or to otherwise cause injury, such as to constitute

4    malice, oppression, or fraud under California Civil Code section 3294, thereby entitling

5    HUEZO to punitive damages in an amount appropriate to punish or set an example of

6    BALL.

7    **PRAYER FOR RELIEF**

8    WHEREFORE, HUEZO prays for relief as follows;

9    1.    For a setoff of BALL claims;

10   2.    For that this lawsuit be dismissed and that a judgment be entered against the BALL for any

11   counter-claims;

12   3.    For dischargeability of HUEZO debt;

13   4.    For damages in an amount to be proven at trial;

14   5.    For attorney's fees and cost of suit herein;

15   6.    For general and special damages in an amount according to proof;

16   7.    For usurious interest payments to be applied to the principal balance;

17   8.    For such other relief as the court finds just and proper.

18

19   DATED:        January 10, 2012            LAW OFFICE OF BARUCH C. COHEN
                                              A Professional Law Corporation
20

21                                            By ____/S/ Baruch C. Cohen_____
                                              Baruch C. Cohen, Esq.
22                                            *Attorney For Defendant & Counter-Claimant*
                                              *VICTOR HUEZO*
23

24

25

26

27

28

| In re: VICTOR HUEZO | Chapter 7 No. 2:11-bk-35922-EC |
|---|---|
| JOEY BALL vs. VICTOR HUEZO | Adversary # 2-11-ap-02825-EC |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

### PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 4929 Wilshire Boulevard, Suite 940, Los Angeles, CA 90010. The document entitled: **DEFENDANT VICTOR HUEZO'S ANSWER TO COMPLAINT AND COUNTER-CLAIMS AGAINST JOEY BALL** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

Baruch C Cohen - bcc4929@gmail.com
Nicholas Kanter - Nkanter@lewitthackman.com

II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL(indicate method for each person or entity served)**:** On January 10, 2012 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*
☐Service information continued on attached page

Nicholas Kanter, Esq., Lewitt, Hackman, Shapiro, Marshall & Harlan, 16633 Ventura Boulevard, 11th Floor, Encino, CA 91436 (818) 990-2120 www.lewitthackman.com

Honorable Ellen Carroll, Courtroom 1639 United States Bankruptcy Court, Central District of California, 255 East Temple Street, Los Angeles

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| *Date*    January 10, 2012 | *Signature* |
|---|---|
| *Type Name* **BARUCH C. COHEN** | By    /S/ Baruch C. Cohen |